OPINION OF THE COURT
Richard A. Goldberg, J.
Petitioner’s application for leave to serve a late notice of claim is hereby granted.
*599 On May 16, 1995, petitioner Elizabeth Horowitz was allegedly injured as she was walking under a construction bridge in front of Pershing Junior High School, Brooklyn, New York. Anthony Trióla, a person alleged by petitioner to be a staff inspector for highway maintenance, came to petitioner’s aid, and according to petitioner, called to the construction workers on the bridge advising them that she had been injured and asked the workers whether they had permits for the project. According to petitioner, the workers "failed to respond”.
According to petitioner, and undisputed by respondent New York City School Construction Authority (SCA), there were no signs at the subject construction site identifying who was doing the construction work. On July 27, 1995, an application was made to the New York City Department of Transportation (DOT) under the Freedom of Information Law for copies of any permits, violations, or other records relating to the "street, highway, sidewalk or building” at the subject location. On August 28, 1995, DOT responded that a search of DOT’s records had revealed that no documents regarding the request were found.
On August 8, 1995, petitioner served notices of claim on the City of New York and the New York City Board of Education.
Only by virtue of a gratuitous remark by the attorney for the Board of Education at the hearing held on March 18, 1996 pursuant to General Municipal Law § 50-h was petitioner alerted to the involvement of SCA in this matter. Shortly thereafter, on April 3, 1996 petitioner brought the instant order to show cause asking the court for leave to serve a late notice of claim pursuant to General Municipal Law § 50-e (5). Petitioner argues that SCA acquired actual knowledge of the defective bridge because SCA itself constructed the bridge, that because SCA is "an obscure public authority”, an excusable error concerning the identity of the municipal entity was made (see, Baldeo v City of New York, 127 AD2d 809 [2d Dept 1987]), that notice to the City and to the Board of Education gave notice to SCA of the underlying facts, that a City employee was present at the time of the accident and advised SCA workers of the accident, and that SCA would not be prejudiced in maintaining its defense on the merits. In support, petitioner submits her own affidavit wherein she recites the facts of the accident, and the affidavit of Mr. Trióla, wherein he states that he has been shown photostats of the front of the building and that they de *600 pict the scene as he remembers it, thereby preserving the appearance of the site.
SCA opposes the petition, arguing that petitioner has not demonstrated that SCA had actual knowledge of the accident within 90 days of its occurrence, that petitioner has offered no reasonable excuse for failing to timely file a notice of claim, and that SCA would be severely prejudiced if a late notice of claim were filed. In support of its opposition, SCA submits the affidavit of Maggie Roman, the insurance and legal coordinator for SCA whose duties include the maintenance of records of notices of claim and accident reports for SCA. Ms. Roman states that she searched for records of petitioner’s accident and found no report of the accident and, further, that the bridge in question has been dismantled and removed from the site.
SCA was established in 1988 by the New York City School Construction Authority Act (Public Authorities Law §§ 1725-1747) (the Act). The Act provides, inter alia, that SCA "shall, in the design, construction, reconstruction, improvement, rehabilitation * * * or otherwise providing for educational facilities, comply with the requirements of the city building code, fire code and electrical code”. (Public Authorities Law § 1733.) The New York City Building Code requires that, at a construction site, "a sign shall be erected * * * which shall bear * * * the name, address and telephone number of the owner of the property, and the name, address and telephone number of the general contractor”. (Administrative Code of City of NY § 27-1009 [c].) In addition, telephone numbers of the Department of Buildings, the Building Enforcement Safety Team, the Emergency Squad and the Department of Transportation must be displayed at such construction sites (1 RCNY 26-01), and permits for sidewalk sheds shall be "posted in a central, visible area” (1 RCNY, ch 26, Appendix A [I] [6] [a]).
It is clear to this court that SCA complied with none of the above requirements, thus making it impossible for members of the public to inform themselves as to who the responsible entities were at the site. Further, petitioner’s inquiries to DOT further demonstrate the futility of investigation in a situation where the public authority, through intention or negligence, did not comply with applicable permit and notice requirements.
Thus, as the Court of Appeals has recognized, where a governmental authority "acts or comports itself wrongfully or negligently, inducing reliance by a party who is entitled to rely and who changes his position to his detriment or prejudice”, the authority "should be estopped from asserting a right or *601 defense which it otherwise could have raised” (Bender v New York City Health & Hosps. Corp., 38 NY2d 662, 668 [1976]). Petitioner and her attorney have done everything reasonable to ascertain the correct identity of the public authority in circumstances where such information was clearly within the exclusive knowledge of the SCA. SCA created the very situation of which it now complains and should be estopped from raising the defense of an untimely notice of claim. An obscure governmental agency may not intentionally or negligently obscure its involvement in an accident and then hide behind the shield of a short Statute of Limitations. Further, this situation is distinguishable from cases where, for example, a plaintiff was merely unaware of the existence of a public authority (Pecchio v National Safety Envtl., 211 AD2d 773, 774 [2d Dept 1995]), or where the conduct of a third party could not be employed to invoke the doctrine of equitable estoppel against the public authority (Matter of Quintero v Town of Babylon Indus. Dev. Agency, 172 AD2d 527 [2d Dept 1991]).